## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

MARINA DISTRICT DEVELOPMENT
COMPANY LLC., doing business          1:20-cv-15719-NLH-KMW
as BORGATA HOTEL CASINO &
SPA,

       Plaintiff,

   v.                                        **OPINION**

AC OCEAN WALK LLC, doing
business as OCEAN CASINO
RESORT,

       Defendant.

---

**APPEARANCES**:

JASON KYRLE ROBERTS
JOHN MICHAEL NOLAN, III
JACKSON LEWIS P.C.
1601 CHERRY STREET
SUITE 1350
PHILADELPHIA, PA 19102

    *On behalf of Plaintiff*

DIANNA D. MCCARTHY
HEIDI MEGAN GOOTNICK
WINGET, SPADAFORA & SCHWARTZBERG, LLP
65 EAST ROUTE 4, SUITE 201
RIVER EDGE, NJ 07661

JEREMY NATHAN KOLMAN
LEIGH ANN BUZIAK
BLANK ROME LLP
ONE LOGAN SQUARE
130 NORTH 18TH ST
PHILADELPHIA, PA 19103

MICHAEL RAY DARBEE
STEPHEN M. ORLOFSKY
BLANK ROME LLP
300 CARNEGIE CENTER

SUITE 220
PRINCETON, NJ 08540

   *On behalf of Defendant*

**HILLMAN**, **District Judge**

   This matter concerns claims by Plaintiff Marina District Development Company, LLC, doing business as Borgata Hotel Casino & Spa ("Borgata"), that Defendant AC Ocean Walk, LLC, doing business as Ocean Casino Resort ("Ocean"), has stolen both employees and trade secrets from the Borgata.  Presently before the Court is Plaintiff's motion for leave to file an amended complaint, as well as Defendant's prior motion to dismiss three of the claims in the original complaint.  For the reasons expressed below, Plaintiff's motion for leave to file its amended complaint will be granted, and Defendant's motion to dismiss will be denied as moot.

**BACKGROUND**

   Plaintiff Borgata is a hotel and casino operating in Atlantic City, New Jersey.  Defendant Ocean is a direct competitor hotel and casino situated less than three miles away from Borgata.  A central aspect of Borgata's business success is its relationship with its most important customers, which it refers to as "high-level patrons," who are responsible for approximately $25 million in revenue per year.  Borgata leverages its information about each of these patrons to

maintain their valuable relationships with the casino and the revenue stream they provide.

As part of this effort, Borgata employs multiple individuals whose jobs focus on high-level patrons.  William Callahan, for example, was Borgata's Vice President of Marketing and ran Borgata's Relationship Marketing Department, where he oversaw Borgata's efforts to build and maintain relationships with high-level patrons.  To do this, Callahan communicated with these patrons using his work-provided phone and learned information about the players habits and preferences. Similarly, Kelly Ashman Burke, Borgata's former Executive Director of Marketing, maintained Borgata's customer databases, which contained extensive information about customer's ties and relationships to Borgata.  Plaintiff further identifies multiple other former employees who played important roles in this aspect of Borgata's business.  Many of these employees, including Callahan and Burke, had employment agreements that included strict confidentiality, non-solicitation, and non-compete provisions.

According to Plaintiff, beginning in May 2020, Mark Conboy, a partner in Luxor Capital Group, Ocean's owner, began soliciting Borgata employees to leave and join Ocean instead. Throughout the summer of 2020, Conboy specifically met with Callahan and Burke to negotiate employment terms.  And,

3

importantly, Plaintiff alleges that the parties discussed potential methods to circumvent the restrictive covenants contained in their employment agreements with Borgata; as Ocean and the former Borgata employees were aware of the high value of the customer information Callahan and Burke had access to, Plaintiff alleges that this was a central purpose for Ocean in soliciting their employment.  After discussing these details with Burke and Conboy, Callahan went so far as to purchase a separate iPhone, on to which he then copied Borgata's customer information and other alleged trade secrets.

Ocean's efforts were apparently successful, as Burke and Callahan ultimately gave notice of their resignations in June and July of 2020, after which they both went to work for Ocean. Over the next two months, Ocean's activities continued, as it hired away at least three more Borgata executives in August. According to Plaintiff, Ocean's solicitation efforts still have not ceased, with five more Borgata employees having been hired by Ocean in January and February of 2021.

Shortly after Plaintiff learned of Ocean's hiring of Burke and Callahan, it filed suit against Defendant, as well as the two employees, in the District Court for the District of Nevada on August 27, 2020.  (ECF No. 1).  Plaintiff simultaneously moved for a temporary restraining order and preliminary injunction, seeking to enjoin the use of Borgata's trade secrets

and the individuals' continued employment by Ocean.  The defendants opposed the motion for a TRO and preliminary injunction, and shortly after filed two motions of their own: a motion to compel arbitration of the claims against Burke and Callahan, (ECF No. 17), and a separate motion to dismiss all claims, which sought to (1) dismiss the claims for lack of personal jurisdiction, (2) dismiss the claims for improper venue, (3) transfer the case to the District of New Jersey if it was not dismissed, and (4) to dismiss only Plaintiff's trade secrets and RICO claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 18).

The District Court for the District of Nevada ultimately granted the motion to compel arbitration of Plaintiff's claims against Burke and Callahan, (ECF No. 86 at 102:10-20), and granted in part and denied in part the motion for a preliminary injunction.  The Court, finding that Plaintiff was likely to succeed on its claims regarding Burke's noncompete clause and its trade secrets misappropriation claim against Callahan, enjoined Burke and Callahan from using or disclosing Borgata's trade secrets, and further enjoined Burke from working for Ocean for eleven months.  (ECF No. 96 at 114:20-115:25; 121:7-20). The parties shortly after stipulated that, while the claims against Burke and Callahan were proceeding in arbitration, the claims against Ocean would be severed and transferred to the

District of New Jersey.  (ECF No. 118).  That stipulation specifically stated that Ocean's motion to dismiss under Rule 12(b)(6) remained active and would be transferred with the case for this Court to rule on.  Id.  The action was therefore transferred to this Court on November 9, 2020.  (ECF No. 119).

A few months later, on February 5, 2021, Defendant filed a motion to stay this action pending completion of Plaintiff's arbitration of its claims against Burke and Callahan, which are closely related to its claims here.  (ECF No. 130).  Then, on February 24, 2021, Plaintiff filed the presently pending motion for leave to file an amended complaint.  (ECF No. 136). Plaintiff's proposed amended complaint is based on the same underlying factual allegations, but removes certain claims against the individual employees and focuses its aim more directly on the actions of Ocean.  (ECF No. 136-1).  The parties ultimately stipulated that briefing and adjudication of the motion to stay would be adjourned until this Court had ruled on the motion for leave to amend.  (ECF No. 138).  Shortly after, Defendant filed a brief opposing the motion to amend, (ECF No. 143), and Plaintiff filed its reply brief in further support of the motion.  (ECF No. 146).  That motion has therefore been fully briefed and the time for filing further briefing regarding the motion to dismiss has expired.  Both motions are ripe for adjudication.

**DISCUSSION**

I.   **Subject Matter Jurisdiction**

This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

II.  **Legal Standard for Motion to Amend**

Motions to amend a complaint are governed by Federal Rule of Civil Procedure 15(a). That rule provides that once a party has filed a responsive pleading to the complaint, as Defendant has long-since done here, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although "[t]he decision to grant or deny leave to amend under Rule 15(a) is 'committed to the sound discretion of the court,'" Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993), the federal rules mandate that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

"An amendment must be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment." Van Duyne v. Stockton University, No. 1:19-cv-21091-NLH-KMW, 2020 WL 6144769, at *2 (D.N.J. Oct. 20, 2020) (quoting Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)). The futility of a proposed amended pleading is evaluated under the same standard of legal sufficiency as a

7

motion to dismiss under Rule 12(b)(6).  Travelers Indent. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

However, "[g]iven the liberal standard for the amendment of pleadings, 'courts place a heavy burden on opponents who wish to declare a proposed amendment futile.'"  Brainbuilders, LLC v. Optum, Inc., No. 18-638, 2019 WL 2315389, at *5 (D.N.J. May 31, 2019) (quoting High 5 Games, LLC v. Marks, No. 13-7161, 2017 WL 349375, at *5 (D.N.J. Jan. 24, 2017)).  Therefore, "[i]f a proposed amendment is not *clearly* futile, then denial of leave to amend is improper."  High 5 Games, LLC, 2017 WL 349375, at *5 (emphasis in original) (quoting Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J. 1990)); see also 6 Wright, Miller & Kane, Federal Practice and Procedure § 1487 (3d ed. 2012).

### III. __Analysis__

As outlined above, presently pending before the Court are both Defendant's motion to dismiss, filed shortly after the initial start of this action, and Plaintiff's recently filed motion for leave to amend the complaint.  Since this Court's determination regarding Plaintiff's motion to amend may well resolve the pending motion to dismiss as well, the Court will first address whether Plaintiff shall be granted leave to file its proposed amended complaint.

Plaintiff's proposed amended complaint is based on substantially similar underlying allegations as those found in its initial complaint, and puts forth five separate claims, for violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq.*, the New Jersey Trade Secrets Act ("NJTSA"), N.J.T.S.A. § 56:15-1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO Act"), 18 U.S.C. § 1961, *et seq.*, as well as claims for tortious interference and unfair competition.  Defendant argues that leave to amend should be denied because Plaintiff's amended claims are futile for two separate reasons: (1) Plaintiff failed to substantively respond to Defendant's earlier motion to dismiss the trade secrets and RICO claims under Rule 12(b)(6), and (2) all five of Defendant's claims, as pled in the proposed amended complaint, fail to sufficiently state a claim.

Defendant's first argument is, essentially, that Plaintiff waived its NJTSA, DTSA, and RICO claims by not substantively opposing Defendant's initial motion to dismiss.  Defendant's 12(b)(6) arguments were included in a larger motion, filed by Defendant while the parties were simultaneously litigating Plaintiff's motion for a preliminary injunction.  That motion also sought to dismiss the complaint under Rule 12(b)(2) for lack of personal jurisdiction, to dismiss under Rule 12(b)(3) for improper venue, and to alternatively transfer the case to the District of New Jersey.  (ECF No. 18).  When the District Court for the District of Nevada ultimately granted a preliminary injunction, the parties agreed to sever the claims against Ocean and transfer the claims against Defendant to this Court.  That stipulated order explicitly left pending Plaintiff's motion to dismiss under 12(b)(6) for this Court to rule on.  As Defendant notes, Plaintiff's response to the larger motion to dismiss did not substantively grapple with the 12(b)(6) arguments; instead, it simply argued that "any motion practice directed at the sufficiency of Plaintiff's Complaint must be brought before the arbitrator."  (ECF No. 63 at 13).

Defendant argues that based on this, the Court should find that Plaintiff has waived any arguments in support of its claims, and that therefore amendment would be futile.  In support of this argument, Defendant directs the Court to one

case in which a district court granted dismissal of claims when the plaintiff had not contested certain arguments, Person v. Teamster Local Union 863, 2013 WL 5676802, at *2 (D.N.J. Oct. 17, 2013), and a separate case where the Third Circuit held that a separate district court had not abused its discretion in doing the same.

As demonstrated by Defendant's own cited case law, even were the Court to hold that Plaintiff had waived its arguments regarding the three claims in its initial complaint that Defendant moved to dismiss, it would still be within this Court's discretion to determine whether the claims should still be assessed through a merits analysis of the 12(b)(6) arguments. This Court has previously stated that "[t]he lack of opposition to a motion to dismiss does not automatically compel a finding in the moving party's favor," even though "when a plaintiff is represented by counsel, a court may dismiss a plaintiff's claims without an analysis of the merits of the claims. Chamberlain v. United States Postal Service, National Association of Letter Carriers Local Branch 370, No. 16-cv-04941-NLH-AMD, 2018 WL 1327106, at *6 (D.N.J. March 15, 2018) (citing Jones v. Unemployment Compensation Bd. of Review, 381 F. App'x. 187, 189 (3d Cir. 2010) (discussing Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991), which explained that a Rule 12(b)(6) motion should not be granted without an analysis of the merits

of the underlying complaint notwithstanding local rules regarding the granting of unopposed  motions, except that "some cases" could be dismissed as unopposed, "particularly if the party is represented by an attorney" or if the party failed to comply with a court's order).

Here, the Court finds that it would be inappropriate to simply deny leave to amend — and in Defendant's ideal world, to further grant the initial motion to dismiss — without an analysis of the merits of the claims as pled.  The procedural history of this case, despite being less than a year old, is complex, and the parties have now fully briefed the issue of whether Plaintiff's claims as stated in the amended complaint are sufficiently pled to avoid being declared clearly futile. And the Court recognizes the strong judicial "preference that cases be disposed of on the merits whenever practicable." Mrs. Ressler's Food Products v. KZY Logistics LLC, 675 F. App'x 136, 137–38 (3d Cir. 2017).  Accordingly, the Court will exercise its discretion and fully address the arguments put forth by the parties and the sufficiency of Plaintiff's claims.

### A. **Plaintiff's Proposed Trade Secrets Claims**

Plaintiff's proposed amended complaint includes trade secrets claims under both the DTSA and the NJTSA.  The DTSA provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action ... if the trade secret

is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The analysis of claims under both statutes fold into each other, and the Court will therefore consider the two claims together. Austar Int'l Ltd. v. AustarPharma LLC, 425 F. Supp. 3d 336, 355 (D.N.J. 2019)

Defendant's single argument for why these claims are both futile is straightforward: that Plaintiff has not sufficiently alleged that Defendant actually used any of Plaintiff's trade secrets.  In support of its argument that such allegations are necessary to state a claim under both statutes, Defendant refers the Court to Oakwood Labs., LLC v. Thanoo, No. 3:17-cv-05090-PGS-LHG, 2019 WL 5420453 (D.N.J. Oct. 23, 2019), which stated that "[b]oth the DTSA and the NJTSA require a plaintiff 'to demonstrate . . . misappropriation of [a trade] secret, defined as the knowing improper acquisition *and* use or disclosure of the secret." Id. at *3 (quoting Par Pharm., Inc. v. QuVa Pharma, Inc., 764 F. App'x 273, 278 (3d Cir. 2019)).

Based on this quote, Defendant pursues its argument that, without a sufficiently pled allegation that Ocean used Plaintiff's trade secrets, Plaintiff has failed to adequately plead misappropriation and its claims are therefore futile. However, the definition of "misappropriation" put forth by Defendant is simply inaccurate.  The Oakwood Labs opinion relied

13

upon by Plaintiff quotes from a Third Circuit opinion, Par
Pharm., Inc. v. QuVa Pharma, Inc., 764 F. App'x 273 (3d Cir.
2019).  In support for the quote above, the Third Circuit there
simply cited to the relevant definitions of misappropriation for
both statutes, found at 18 U.S.C. §§ 1836(b)(1), 1839(3), (5);
N.J.S.A. § 56:15-2.

However, Par Pharm., Inc. is a non-precedential opinion,
and a close reading of the statutory definitions it cited shows
that the quote above is phrased with an unfortunate lack of
specificity.  Simply put, misappropriation does not require a
party to demonstrate both acquisition *and* disclosure or use.
Instead, the DTSA defines misappropriation as requiring the
"acquisition of a trade secret of another by a person who knows
or has reason to know that the trade secret was acquired by
improper means," *or* the "disclosure or use of a trade secret
that was acquired by improper means."  18 U.S.C. § 1839(5)(A)
and (B).  The NJTSA similarly defines misappropriation, using
almost identical language, as meaning "(1) Acquisition of a
trade secret of another by a person who knows or has reason to
know that the trade secret was acquired by improper means; *or*
(2) Disclosure or use of a trade secret of another without
express or implied consent of the trade secret owner by a person
. . ."  N.J.S.A. § 56:15-2(1)-(2).

As other courts have recognized, these statutes therefore

"contemplate[] three theories of liability: (1) acquisition, (2) disclosure, or (3) use."  Bramshill Investments, LLC v. Pullen, No. 19-18288, 2020 WL 4581827, at *3 (D.N.J. Aug. 10, 2020) (quoting AUA Priv. Eq. Partners, LLC v. Soto, No. 17-8035, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018)).  This Court itself has previously recognized misappropriation claims based on the acquisition theory.  See NVR, Inc. v. Davern, No. 15-5059 (NLH/KMW), 2015 WL 9450831, at *2 (D.N.J. Dec. 23, 2015) ("[T]he Court finds that NVR is likely to prove that Davern acquired NVR's trade secrets and knew, or had reason to know, that the trade secrets were acquired by improper means.") (citing N.J.S.A. § 56:15-2).

With this correct definition in mind, the Court easily finds that Plaintiff's proposed amended claims are not clearly futile.  Defendant has not disputed here that the information it obtained through Burke and Callahan qualifies as trade secrets, and has further put forward no argument that Plaintiff has not adequately pled that Defendant knew or had reason to know that these trade secrets were obtained by improper means.  Nor could Defendant likely put forth a reasonable argument on this second point, as Plaintiff has straightforwardly and explicitly alleged that Defendant worked together with Burke and Callahan to determine how to circumvent the restrictive covenants in their contracts, and that Callahan thereafter copied Borgata's trade

15

secrets onto a separate personal phone that he brought with him
to Ocean.  Plaintiff's claims for misappropriation of trade
secrets under both the DTSA and NJTSA are therefore not clearly
futile at this stage, and its motion to amend will be granted as
to these claims.[1]  As the Court will permit Plaintiff to proceed
with its amended trade secrets claims, Defendant's motion to
dismiss those claims as originally pled in the initial complaint
will be denied as moot.

### B. **Plaintiff's Proposed RICO Claim**

The Court turns next to Plaintiff's proposed RICO claim.
Defendant again argues that Plaintiff's proposed amended claim
is futile, and therefore leave to amend should be denied.
Defendant puts forward two arguments for why Plaintiff's RICO
claim is clearly futile.

First, Defendant contends that "Plaintiff does not plead a
'person' separate and distinct from an 'enterprise' as required
by RICO."  (ECF No. 143 at 9).  While the amended complaint does
not specify which specific prong of the RICO Act the claim is
brought under, given the parties' discussions in their briefs
the Court will assume, for the purpose of adjudicating this

---

[1] As the central question before the Court at this stage is
simply whether Plaintiff should be granted leave to file an
amended complaint, the Court therefore finds it unnecessary to
further address whether Plaintiff's claims would have been
clearly futile under the use theory and makes no finding on that
question.

motion, that Plaintiff intends to assert a claim under 18 U.S.C. § 1962(c), which provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001). Stated otherwise, "a claim simply against one corporation as both 'person' and 'enterprise' is not sufficient." Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258, 268 (3d Cir. 1995). "Person" is defined by § 1961(3) to mean "any individual or entity capable of holding a legal or beneficial interest in property," whereas an entity is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Id. at § 1961(3).

Defendant's argument, at its core, is that Plaintiff's RICO claim improperly relies on Ocean as both the person and the enterprise involved in the underlying predicate acts.  The

17

parties do not dispute here that Ocean is the "person" that Defendant seeks to hold liable, nor that Ocean qualifies as a person under the statutory definition.  However, Plaintiff argues that Ocean is not, by itself, alleged to be the separate "enterprise" at the center of the amended complaint's claim. Indeed, as Plaintiff points out, the amended complaint explicitly alleges that Ocean "conspired with Burke, Callahan, and other former Borgata employees" to steal trade secrets from Plaintiff.  (ECF No. 136-2 at ¶ 45).  Accordingly, Plaintiff's amended complaint asserts that the "enterprise" here was a group consisting of both Ocean and the individual Borgata employees with whom Ocean allegedly conspired to steal trade secrets — not simply Ocean by itself.

To counter this, Defendant further argues that such an enterprise cannot exist, because "there is no distinct RICO enterprise where the corporation and its employees or agents are alleged to associate or act together.  (ECF No. 143 at 9) (citing Association of N.J. Chiropractors v. Aetna, Inc., No. 09-3761 (JAP), 2011 WL 2489954, at *6 (D.N.J. June 20, 2011)). In general, this is an accurate description of the law; although, as Plaintiff has further noted, Defendant's own cited case law clarifies that even though "a claim simply against one corporation as both 'person' and 'enterprise' is not sufficient[,]... alleging conduct by officers or employees who

operate or manage a corporate enterprise satisfies this
requirement." Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46
F.3d 258, 268 (3d Cir. 1995).

However, the Court need not go so far as to address whether
any of the individuals listed here as part of the enterprise
might also qualify under this second concept. More simply,
Plaintiff's amended complaint does not claim, as Defendant
implies, that the enterprise consisted of Ocean and its
employees. Instead, the amended complaint explicitly alleges
that Ocean conspired with Burke, Callahan, and other employees
of Borgata prior to hiring them. In fact, nearly all of the
factual allegations of specific conduct in the amended complaint
relate to alleged actions taken prior to Ocean's hiring of
Burke, Callahan, and other former Borgata employees. These
factual allegations detail discussions regarding how to
circumvent the restrictive covenants in the Borgata employment
contracts and actions taken to preserve access to the alleged
trade secrets, all conducted while Burke and Callahan were still
employees of Borgata. As Plaintiff points out, Defendant has
provided absolutely no case law supporting the idea that that
conspirators can avoid RICO liability by going into business
together, or that an entity like Ocean can avoid RICO liability
simply by later hiring other members of the RICO enterprise.

Second, Defendant, in a single throw-away sentence, asserts

19

that "[t]he RICO claim fails in other respects, including the failure to plead at least two predicate racketeering acts." (ECF No. 139 at 10).  Defendant cites to no case law, and makes no further attempt to develop this argument or demonstrate how it proves Plaintiff's claim are futile.  And, importantly, Plaintiff has pointed out that its amended complaint alleges that the enterprise conspired to have multiple Borgata employees steal trade secrets — an allegation that, on its face, would appear to include multiple predicate acts of misappropriation of trade secrets.  Given the failure to develop this argument any further, the Court finds that Defendant has not met the "heavy burden" placed on it as a party challenging a motion for leave to amend, and that Plaintiff's claims are not so clearly futile as to warrant denial of their motion.

The Court notes here that Defendant's motion to dismiss targeted Plaintiff's initial RICO claim in the original complaint only by arguing that it had failed to allege a qualifying predicate act, because the original complaint referenced 18 U.S. Code § 1831, which covers economic espionage that will benefit any foreign government, foreign instrumentality, or foreign agent . . ."  As Plaintiff's amended RICO claim instead relies upon § 1832, the provision covering "theft of trade secrets," Defendant's motion to dismiss the RICO claim under Rule 12(b)(6) will be denied as moot.

C. **Plaintiff's Proposed Unfair Competition and Tortious Interference Claims**

Defendant's opposition to Plaintiff's amended complaint is not confined to the claims it initially moved to dismiss. Instead, Defendant also asserts that Plaintiff's tortious interference and unfair competition claims, which were not attacked by the initial 12(b)(6) motion, are both futile.

Defendant attacks the first claim by arguing that New Jersey law does not recognize tortious interference claims for a company hiring another company's at-will employee without the use of improper means, and that Plaintiff has not sufficiently alleged that improper means were utilized here.  Defendant's statement of the law in New Jersey is accurate.  "The mere inducement of an employee to move to a competitor is not, in and of itself, actionable when the employee is terminable at will." National Auto Division, LLC v. Collector's Alliance, Inc., No. A-3178-14T3, 2017 WL 410241, at *3 (N.J. Super. Ct. App. Div. Jan. 31, 2017) (citing Avtec Indus., Inc. v. Sony Corp. of Am., 205 N.J. Super. 189, 194 (N.J. Super. Ct. App. Div. 1985)).

However, the New Jersey Supreme Court has made clear "that the one who acts to induce another is not free to do so by any means whatsoever. Regardless of whether the focus is on an existing contract, a contract terminable at will, or a purely prospective contractual relationship, the means utilized may be

21

neither improper, nor wrongful." Nostrame v. Santiago, 61 A.3d 893, 902 (N.J. 2013) (internal citations omitted). And as Defendant acknowledges, wrongful means has been explained to include fraud, defamation, deceit and misrepresentation, violence, intimidation, criminal, or civil threats and/or violations of law. Id.

Here, Defendant contends that not only has Plaintiff alleged none of these things, but also that "nor is any such allegation possible." (ECF No. 139 at 13). Neither of these statements appear to be true. Defendant has straightforwardly alleged here that, as part of Ocean's process of hiring away Borgata employees, Ocean violated multiple trade secrets laws and induced Borgata employees to violate noncompete clauses and restrictive covenants that extended and applied beyond the conclusion of any at-will employment. The District Court for the District of Nevada went so far as to enter a preliminary injunction against both Burke and Callahan based on a finding that Plaintiff would likely succeed on its claim that Burke violated her noncompete clause and that Callahan misappropriated trade secrets in the process of moving from Borgata to Ocean. (ECF No. 96 at 114:20-115:25; 121:7-20). Plaintiff has clearly alleged that Ocean committed a violation of law in inducing Borgata's employees to leave for employment elsewhere and bring with them Borgata's trade secrets, and that these actions

22

constituted improper or wrongful means.  See Platinum Mgmt.,
Inc. v. Dahms, 666 A.2d 1028, 1044 (N.J. Super. Ct. Law Div.
1995) ("The acts of GAF to increase its business by
intentionally seeking out and employing PMI's key sales
employees, so that it could sell to PMI's existing customers by
reason of the customer information they had, constituted
intentional wrongful acts committed without justification or
excuse.").  The Court therefore finds that Plaintiff's tortious
interference claim is not so clearly futile as to warrant denial
of the motion for leave to amend.

Next, Defendant attacks Plaintiff's unfair competition
claim as futile on only one ground: that "unfair competition is
not a distinct cause of action under New Jersey law."  (ECF No.
139 at 13 (quoting Heartland Payment Sys., LLC v. Carr, No.
3:18-cv-09764-BRM-DEA, 2021 WL  302918, at *8-9 (D.N.J. Jan. 29,
2021)).  Again, Defendant's statement regarding New Jersey law
is, on the surface, accurate.  As a general rule, New Jersey
"courts have dismissed unfair competition claims where they are
duplicative of claims for tortious interference."  Diversified
Indus., Inc. v. Vinyl Trends, Inc., No. 13-6194, 2014 WL 1767471
at *6 (D.N.J. May 1, 2014).

However, the exact same paragraph from Heartland that
Defendant quotes further explains that, while unfair competition
is not generally a distinct cause of action, "[i]n New Jersey,

unfair competition is commonly invoked for claims similar to misappropriation of trade secrets or commercial identity," and it "protects more information than a traditional trade secret claim." Id. (quoting Avaya Inc., RP v. Telecom Labs, Inc., 838 F.3d 354, 386–87 (3d Cir. 2016)).  New Jersey courts, in explaining the general rule against distinct unfair competition claims, have specifically clarified that "[o]utside of the intellectual property context, unfair competition is not an independent cause of action." Nat'l Auto Div., 2017 WL 410241, at *5.  See also Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Group, Inc., 2010 WL 3772543, at *9 (N.J. Super. Ct. App. Div. 2010) ("New Jersey courts have noted that, in essence, unfair competition is a business tort, generally consisting of the misappropriation of a business's property by another business.") (citations and internal quotations omitted).

And as the Heartland case cited by Plaintiff further noted, courts in this district have previously declined to dismiss unfair competition claims involving misappropriation of trade secrets simply because they duplicate a tortious interference claim.  See LoanDepot.com v. CrossCountry Mortg., Inc., 399 F. Supp. 3d 226, 238 (D.N.J. 2019).  Given this larger context, and the allegations involved in the amended complaint here, the Court finds that Plaintiff's unfair competition claims are not clearly futile at this stage.  While the Court makes no finding

here regarding whether Plaintiff may ultimately recover on both this claim and its tortious interference claim in this action, as the parties have not fully briefed that question, Plaintiff will be allowed to proceed with its unfair competition claim at this stage.  Accordingly, Plaintiff's motion for leave to file its amended complaint will be granted.

## **CONCLUSION**

For the reasons expressed above, Plaintiff's motion for leave to file its amended complaint (ECF No. 136) will be granted, and Defendant's motion to dismiss (ECF No. 18) will be denied as moot.

An appropriate Order will be entered.


Date: __April 19, 2021__          ____/s Noel L. Hillman___
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

25